1  Jonathan M. Lebe (State Bar No. 284605)
   Jon@lebelaw.com
2  Brielle D. Edborg (State Bar No. 347579)
   Brielle@lebelaw.com
3  **Lebe Law, APLC**
4  777 S. Alameda Street, Second Floor
   Los Angeles, CA 90021
5  Telephone: (213) 444-1973
6  Facsimile: (213) 457-3092

7
   Attorneys for Plaintiffs Raul Martinez and Philippe Vieux,
8  individually and on behalf of all others similarly situated

9

10            **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13 Raul Martinez and Philippe Vieux, individually and on behalf of all others similarly situated, | Case No.: 5:21-cv-00572-MEMF-SP |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** |
| 16 f                    Plaintiffs, | |
| 17    vs. | [Declaration of Jonathan M. Lebe; Declaration of Plaintiff Raul Martinez; Declaration of Philippe Vieux; Declaration of Jennifer Mills; [Proposed] Order; and [Proposed] Judgment Filed Herewith] |
| 19 Knight Transportation, Inc. Which Will Do Business In California As Arizona Knight Transportation, Inc., | |
| 21                    Defendant. | Hearing Information: Judge: Hon. Maame Ewusi-Mensah Frimpong Date: April 23, 2024 Time: 10:00 a.m. Dept.: 8B |
| | Complaint Filed: July 8, 2020 Removed: April 1, 2021 Trial Date: None Set |

26

27

28

SMRH:4893-5986-7316.3

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on April 23, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, before the Honorable Maame Ewusi-Mensah Frimpong, Plaintiffs Raul Martinez and Philippe Vieux ("Plaintiffs"), individually and on behalf of all others similarly situated, will and hereby do move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the proposed Settlement Class under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Granting final approval to the class and representative action settlement based upon the terms set forth in the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Confirming Plaintiffs' appointment as Class Representatives for settlement purposes;

4. Confirming the appointment of Lebe Law, APLC as Class Counsel for settlement purposes; and

5. Entering final judgment in the form of the proposed Final Judgement and Order Granting Final Approval filed herewith.

///
///
///
///
///
///
///
///

SMRH:4893-5986-7316.3

This motion is made on the grounds that the proposed Settlement, which was preliminarily approved by this Court on December 5, 2023, is the product of arm's-length, good-faith negotiations, is fair and reasonable to the Class and should now be finally approved, as more fully discussed in the accompanying Memorandum in Support of Final Approval of Class Action Settlement and Entering Final Judgment.

This motion is based on this Notice; the accompanying Memorandum of Points and Authorities in support; Declaration of Class Counsel Jonathan M. Lebe; Declaration of Plaintiff Raul Martinez; Declaration of Plaintiff Philippe Vieux; Declaration of Jennifer Mills on behalf of Rust Consulting Regarding Notice and Settlement Administration; the proposed Order Granting Final Approval of Class Action Settlement; the proposed Final Judgment; the Settlement Agreement; all other pleadings, declarations, and other papers on file in this action; and any oral argument or other matter that may be considered by the Court.

Respectfully submitted,

Dated:  April 10, 2024                **LEBE LAW, APLC**

By:    */s/ Jonathan M. Lebe*
Jonathan M. Lebe
Brielle D. Edborg
Attorneys for Plaintiffs Raul Martinez and Philippe Vieux, Individually and on behalf of all others similarly situated

SMRH:4893-5986-7316.3

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND..................................2

  A.  Plaintiffs' Claims Against Defendant and Procedural History ................2

III. SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS ...........5

  A.  Settlement Class Definition ..........................................................5

  B.  Monetary Terms of the Settlement ..................................................5

  C.  Summary of Notice Process ...........................................................6

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL .......................7

  A. The Settlement Is Fair, Adequate, and Reasonable.............................7

    1.   The Strength of Plaintiffs' Case .................................................8

    2.   Risk, Expense, Complexity, and Duration of Further Litigation.........11

    3.   Risk of Maintaining Class Action Status....................................12

    4.   Amount Offered in Settlement Is Reasonable Given the Realistic Value

    of Plaintiff's Claims in Light of the Significant Litigation Risks.................12

    5.   Discovery Completed and the Stage of the Proceedings ......................13

    6.   The Experience and Views of Counsel.........................................13

    7.   The Reaction of the Class Members to the Proposed Settlement ........14

V.   THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS

PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED .........14

VI. CONCLUSION ...............................................................................15

SMRH:4893-5986-7316.3

# TABLE OF AUTHORITIES

**CASES**

*Amiri v. Cox Commc'ns California*, LLC,
  272 F. Supp. 3d 1187 (C.D. Cal. 2017) ................................................................10

*Brown v. Am. Airlines, Inc.*,
  2015 WL 6735217 (C.D. Cal. Oct. 5, 2015) ......................................................10

*Carrington v. Starbucks Corp.*,
  30 Cal. App. 5th 504 (2018) ................................................................................11

*Estrada v. Royalty Carpet Mills, Inc.*,
  15 Cal. 5th 582 (2024) ........................................................................................11

*Fleming v. Covidien, Inc.*,
  No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011)
  .............................................................................................................................11

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
  42 Cal. 4th 554 (2007) ..........................................................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................7

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008) .................................................................................7

*In re Omnivision Techs., Inc.*,
  559 F.Supp. 2d 1036 (N.D. Cal. 2008) ...............................................................13

*In re Pacific Enterprises Securities Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................................13

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. 2007) ..............................12

*In re Syncor ERISA Litigation*,
  516 F.3d 109 (9th Cir. 2008) .................................................................................7

SMRH:4893-5986-7316.3

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,

MDL Docket No. C-07-1841 (EMC), 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ................................................................................................... 13

*Kao v. Joy Holiday*,

12 Cal. App. 5th 947 (2017) .................................................................. 10

*Maldonado v. Epsilon Plastics, Inc.*,

22 Cal.App.5th 1308 (2018) .................................................................... 9

*Marshall v. Holiday Magic, Inc.*,

550 F.2d 1173 (9th Cir. 1977) .............................................................. 14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 11, 14

*Price v. Starbucks Corp.*,

192 Cal. App. 4th 1136 (2011) .............................................................. 10

*Schiller v. David's Bridal, Inc.*,

Case No. 1:10-cv-616-AWI-SKO, 2011 WL 2117001 (E.D. Cal. 2012) ............ 14

*Thurman v. Bayshore Transit Mgmt., Inc.*,

203 Cal. App. 4th 1112 (2012) .............................................................. 11

*Wesson v. Staples the Office Superstore, LLC*,

68 Cal. App. 5th 746 (2021) .................................................................. 10

**STATUTES**

Labor Code § 2699(e)(2) ........................................................................ 11

**RULES**

Fed. R. Civ. Proc. 23(e) ........................................................................... 7

**REGULATIONS**

Cal. Code Regs., tit. 8 § 13520 .............................................................. 10

SMRH:4893-5986-7316.3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Raul Martinez and Philippe Vieux ("Plaintiffs"), individually and on behalf of the proposed Settlement Class, respectfully request final approval of the Settlement Agreement of Class Action and Private Attorneys General Act ("PAGA") Claims ("Settlement"), entered into by and between Plaintiffs and Defendant Knight Transportation, Inc., which will do business in California as Arizona Knight Transportation, Inc., ("Defendant Knight Transportation" or "Defendant").[1]

The Settlement provides for a non-reversionary Maximum Gross Settlement Amount of $1,320,000.00 to the following Settlement Class, which is comprised of 2,564 Participating Class Members:

> All persons who are or have been employed by Defendant as employee over-the-road drivers who were California residents or assigned to work out of a location in California from April 6, 2016 through December 5, 2023 (the "Class Period").

Payments from the Net Settlement Amount shall be paid to all Participating Class Members *pro rata* based on each Participating Class Member's number of workweeks worked during the Class Period.

This Settlement came to fruition only after extensive formal and informal discovery; robust legal research and analysis; extensive investigation by the Parties and by Class Counsel; the exchange of extensive class-wide data and analysis of that data; arm's-length settlement negotiations at a private mediation session with Mark Rudy, Esq., an experienced wage and hour class action mediator; as well as extensive negotiations after the mediation, which eventually led to the Settlement.

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Jonathan M. Lebe ("Lebe Decl.").

SMRH:4893-5986-7316.3

In its December 5, 2023, Order granting Plaintiffs' Motion for Preliminary Approval, this Court preliminarily found that "the settlement is fair, reasonable, and adequate, that the class could be certified for purposes of settlement," and that the requirements of Rules 23(a) and 23(b)(3) are met.  Dkt. No. 53, at pp. 1, 10-12. Since this Court granted preliminary approval on December 5, 2023, nothing has changed to impact the propriety, fairness, adequacy, and reasonableness of the Settlement.  In fact, since Notice of the proposed Settlement was provided to the Settlement Class via U.S. first class mail, the response of the Settlement Class members has been extremely positive: only six (6) Settlement Class members have objected to the Settlement and only eleven (11) have requested exclusion from the Settlement, resulting in a **99.6%** participation rate.  *See* Declaration of Jennifer Mills on Behalf of Rust Consulting Regarding Notice and Settlement Administration ("Mills Decl."), at ¶¶ 12, 13, 16.

As explained below, the Court should grant Plaintiffs' motion in its entirety because the Settlement Class continues to meet the requirements for class certification for settlement purposes under Fed. R. Civ. Proc. 23, and the Settlement warrants final approval because it is a fair, adequate, and reasonable compromise of the disputed claims in this case.

In light of the foregoing, Plaintiffs respectfully submit that the Court should enter the [Proposed] Judgment and Order Granting Final Approval submitted herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Claims Against Defendant and Procedural History

On July 8, 2020, Plaintiff Raul Martinez filed the original Complaint in the San Bernadino Superior Court entitled *Raul Martinez v. Knight Transportation, Inc.*, Case No. CIVDS2015264. Declaration of Jonathan M. Lebe ("Lebe Decl."), ¶ 23; *see also* Dkt. 1.  The Complaint alleged causes of action for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Timely Pay

All Earned Wages; (4) Unlawful Deduction of Wages; (5) Failure to Provide Meal Periods; (6) Failure to Permit Rest Breaks; (7) Failure to Provide Accurate Itemized Wage Statements; (8) Failure to Reimburse Necessary Business Expenses; (9) Failure to Pay All Wages Due Upon Separation of Employment; and (10) Violation of Unfair Competition Law. *Id.* On December 18, 2020, Defendant answered the Complaint. Lebe Decl., ¶ 24.

On January 29, 2021, Plaintiffs Raul Martinez and Philippe Vieux subsequently filed the operative First Amended Complaint ("FAC"), adding a cause of action for civil penalties under the California Private Attorneys General Act ("PAGA"). Lebe Decl., ¶ 25. On February 26, 2021, Defendant answered the FAC. Lebe Decl., ¶ 26.

On April 1, 2021, Defendant removed the action to the United States District Court for the Central District of California, Case No. 5:21-cv-00572-MEMF-SP. Lebe Decl., ¶ 27.

On December 13, 2022, after months of engaging in robust legal research and analysis, extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide data and analysis of that data, motion practice, and extensive litigation where preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals, the parties participated in an arm's-length mediation with Mark Rudy, Esq., an experienced wage and hour class action mediator. Lebe Decl., ¶ 30. Although the case did not settle at mediation, the Parties continued to engage in settlement discussions through Mr. Rudy. *Id.* On February 14, 2023, Mark Rudy issued a mediator's proposal for an all-inclusive settlement in the amount of $1,100,000.00. Lebe Decl., ¶ 31. On February 16, 2023, the Parties accepted the mediator's proposal. Lebe Decl., ¶ 32. The parties participated in extensive negotiations over the following months to finalize the finer points of the Settlement Agreement that is now before the Court. *Id.*

On July 20, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class and Representative Action Settlement. Lebe Decl., ¶ 33. On December 5, 2023, the Court granted preliminary approval of the Settlement. Lebe Decl., ¶ 34.

On February 19, 2024, the Parties filed a Joint Stipulation to Continue Deadlines and Final Approval Hearing (Dkt. 55), which included a continued date for the Parties to send out the Notice to the Settlement Class. Lebe Decl., ¶ 35. As the Parties had not received an order on the Joint Stipulation, on February 21, 2024, the Parties filed a Joint *Ex Parte* Application to Continue Final Approval Hearing Date and Related Deadlines, which the Court granted (Dkt. 58) and, in relevant part, ordered that the Notice needed to be sent out by March 8, 2024 ("Joint *Ex Parte* Order"). *Id.*

The Settlement Administrator, without the Parties' permission, sent the Court-approved Notice to the Settlement Class on February 26, 2024, which is the original date that the Parties had stipulated to send the Notice. Lebe Decl., ¶ 36. The Settlement Administrator immediately corrected the issue after the Court approved the final dates in its Joint *Ex Parte* Order and sent the Court-Approved Notice on March 8, 2024, to the 2,564 individuals in the Settlement Class. *Id.*; Mills Decl., ¶¶ 8-9.

The Settlement Class had until April 8, 2024, to submit objections, disputes, or to opt-out of the Settlement. Lebe Decl., ¶ 37; Mills Decl., ¶ 9. Due to the Settlement Administrator's mistake, the Settlement Class was provided with 60 days and was provided with two notices of the Settlement and effectively a longer period to submit objections, disputes, or to opt-out of the Settlement. *Id.*

As of the date of this filing, there have been only six (6) objections and eleven (11) exclusions resulting in a 99.6% participation rate. Lebe Decl., ¶ 38; Mills Decl., ¶¶ 12, 13, 16. Now that the Notice process is complete, Plaintiffs respectfully submit the Settlement for final approval.

SMRH:4893-5986-7316.3

## III.    SUMMARY OF THE SETTLEMENT AND NOTICE PROCESS

### A. Settlement Class Definition

The Settlement Class encompasses "all persons who are or have been employed by Defendant as employee over-the-road drivers who were California residents or assigned to work out of a location in California from April 6, 2016 through" December 5, 2023.  Lebe Decl., ¶ 41; *see* Settlement, § I.T.

### B. Monetary Terms of the Settlement

The Settlement provides for Defendant to pay a non-reversionary Maximum Gross Settlement Amount of $1,100,000.00.  Lebe Decl., ¶ 41; Settlement §§ I.J, III.B.1.  However, because the Settlement includes an escalator clause that was triggered by an increase in the number of actual workweeks, the non-reversionary Maximum Gross Settlement Amount increased by 20% to $1,320,000.  Lebe Decl., ¶ 41.  The Net Settlement Amount ("NSA") is the amount remaining from the Gross Settlement Amount after deducting requested attorneys' fees ($440,000.00) and verified litigation costs ($21,352.72), proposed Class Representative Enhancement Payments to Plaintiffs ($5,000.00 to each Plaintiff for a total of $10,000.00), Settlement Administration fees ($17,212.00), and the PAGA Payment ($100,000.00).  Based on these requested amounts, the NSA is estimated to be approximately $756,435.28, which includes $25,000.00 reserved for the PAGA Members.  *Id.*, Exhibit A; Mills Decl., ¶ 17.

The $100,000 PAGA Payment shall be allocated as follows: 75% shall be distributed to the LWDA and 25% to the PAGA Members, *pro rata* based on their Eligible Pay Periods during the PAGA Period.  Lebe Decl., ¶ 41, Exhibit A; Settlement, § III.C.3.  The Net Settlement Amount will be paid to all Participating Class Members, *pro rata*, based on each Participating Class Member's number of Eligible Workweeks during the Class Period.  Lebe Decl., ¶ 41, Exhibit A; Settlement, § III.C.5.a.

Payments to Settlement Class members from the Net Settlement Amount will

SMRH:4893-5986-7316.3

be classified 40% as penalties and interest to be reported on a IRS Form 1099-MISC, and 60% as wages to be reported on a IRS Form W-2. *See* Lebe Decl., ¶ 42; Settlement, § III.C.5. Individual PAGA Payments to the PAGA Members shall be treated as 100% as penalties and reported on an IRS Form 1099-MISC. Lebe Decl., ¶ 42; Settlement, § III.C.3.c. Defendant's share of employer payroll taxes shall be paid by Defendant and is included in the Gross Settlement Amount. Lebe Decl., ¶ 42; Settlement, § I.J.

### C.   Summary of Notice Process

On February 5, 2024, Defendant provided the Settlement Administrator, Rust Consulting ("Rust Consulting") with the names, social security numbers, last known mailing addresses, and applicable employment information. Mills Decl., ¶ 6. The Class List contained data for 2,564 Class Members. Mills Decl., ¶ 6. As part of the preparation for mailing, all 2,564 names and addresses contained in the Class List were then processed and updated utilizing the National Change of Address ("NCOA") database maintained by the U.S. Postal Service, for purposes of updating and confirming the mailing addresses of the Class Members before mailing of the Notice Packet. *Id.*, at ¶ 7. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id.* To the extent that no updated address was found in the NCOA database, the original address provided by Defendant was used for the mailing of the Notice Packet. *Id.*

After performing address updates and verifications, Rust Consulting mailed the Notice Packet (consisting of the Notice of Pending Class and Representative Action Settlement ("Class Notice"), Request for Exclusion (or Opt-Out) Form, and Objection Form) to the 2,564 Settlement Class Members on March 8, 2024. Mills Decl., ¶ 9. Following the initial mailing, 568 Notice Packets were returned to Rust Consulting as undeliverable. *Id.*, at ¶ 10. As a result of a skip trace or forwarding address provided by the Post Office, 524 Notice Packets were re-mailed. *Id.* As of

the date of filing this final approval motion, there are a total of 85 Notice Packets that remain undeliverable because there was no forwarding address and/or no new address could be located through skip trace. *Id.*

Settlement Class Members had until April 8, 2024, to submit objections, requests for exclusion, and disputes. Lebe Decl., ¶ 37; Mills Decl., ¶ 9. **There were six (6) objections submitted and eleven (11) Settlement Class Members elected to opt-out of the Settlement.** Lebe Decl., ¶ 38; Mills Decl., ¶¶ 12, 13. Accordingly, Participating Class Members will receive an estimated average gross payment of $280.87, with the estimated highest gross payment being $2,710.29. Mills Decl., ¶ 18. PAGA Members will receive an estimated average gross payment of $14.17, with the estimated highest gross payment being $72.03. Mills Decl., ¶ 19.

## IV. <u>THE SETTLEMENT WARRANTS FINAL APPROVAL</u>

A class action can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). Thus, in order to approve a proposed settlement, the Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008). In the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted).

### A. The Settlement Is Fair, Adequate, and Reasonable

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," the Court must balance a number of factors: the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a government

participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Plaintiffs address each relevant factor below.[2]

### 1. __The Strength of Plaintiffs' Case__

While Plaintiffs maintain that their claims are meritorious, Plaintiffs acknowledge that Defendant presented multiple defenses. These defenses—and their accompanying risks—were discussed at length in Plaintiffs' Motion for Preliminary Approval. *See* Dkt. No. 37. Plaintiffs recount some of these risks below.

As detailed in Plaintiffs' Motion for Preliminary Approval, there is a significant risk of non-certification and/or not prevailing on the merits with respect to each of Plaintiffs' claims. For example, with respect to Plaintiffs' minimum and overtime wages claim based on failure to pay for off-the-clock work, Defendant contends that it maintained lawful timekeeping policies and/or practices, expressly prohibited off-the-clock work, and compensated employees for all hours actually worked, including all non-driving activities, and that the California Industrial Welfare Commission Wage Order governing transportation workers exempts drivers whose hours of service are subject to federal regulations from overtime. Lebe Decl., ¶ 48; Dkt No. 37-1 (Declaration of Jonathan M. Lebe in Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement), at ¶ 23. Defendant further asserts that this claim is not amenable to class certification as individualized inquiries would be required to determine whether each employee performed off-the-clock work on a particular shift, and whether Defendant was aware that such work was being performed. *Id.*

With respect to Plaintiffs' inaccurate wage statements claim, which is a result of the violations alleged above, Defendant argues that any alleged wage statement

---

[2] Because there are no government participants in the instant lawsuit, Plaintiffs have omitted the seventh factor from discussion.

SMRH:4893-5986-7316.3

violations were not "knowing and intentional," and that Plaintiffs cannot show they or other employees "suffer[ed] injury" due to the alleged wage statement violations, as required to recover penalties under Section 226(e).  Lebe Decl., ¶ 49; Dkt. No. 37-1, at ¶ 24.  Defendant also contends that its wage statements always accurately reflected amounts paid to employees as well as all other required information, precluding liability for wage statement penalties under *Maldonado v. Epsilon Plastics, Inc*., 22 Cal.App.5th 1308, 1336-37 (2018) (agreeing with employer's "commonsense position that the pay stubs were accurate in that they correctly reflected the hours worked and the pay received…The purpose of section 226 is to document the paid wages to ensure the employee is fully informed regarding the calculation of those wages.") (italics in original).  Lebe Decl., ¶ 49; Dkt. No. 37-1, at ¶ 24.  Defendant further argues that the same defenses to class certification as to Plaintiffs' underlying claims apply equally to their derivative wage statement claims, and that additional individualized inquiries would be needed to determine whether each employee "suffered injury" under Section 226(e) and thus whether each employee is eligible for wage statement penalties.  *Id*.

With respect to Plaintiffs' failure to reimburse business expenses claim, Defendant argues that this claim would require individual inquiries into whether PAGA and Settlement Class Members actually used their personal cellular phones for work purposes, how much expense they incurred, whether they submitted a request for reimbursement, and the reasonableness of that expense, thus precluding class certification.  Lebe Decl., ¶ 50; Dkt. No. 37-1, at ¶ 25; *see also*, *e.g*., *Gattuso v. Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554, 568 (2007) ("In calculating the reimbursement amount due under Section 2802, the employer may consider not only the actual expenses that the employee incurred, but also whether each of those expenses was 'necessary,' which in turn depends on the reasonableness of the employee's choices.").

With respect to Plaintiffs' waiting time penalties claim, Defendant argues

SMRH:4893-5986-7316.3

that it has strong defenses to the waiting time claim because there exist good-faith disputes as to Plaintiffs' underlying claims precluding the imposition of penalties. Lebe Decl., ¶ 51; Dkt. No. 37-1, at ¶ 26; *see* Cal. Code Regs., tit. 8, § 13520 (a "good faith dispute that any wages are due will preclude imposition of waiting time penalties"); *Kao v. Joy Holiday*, 12 Cal. App. 5th 947, 963 (2017) (holding "good faith dispute" over employee's exempt status precluded imposition of waiting time penalties over contested wages). Defendant further contends that the same defenses to class certification as to Plaintiffs' underlying claims apply equally to their derivative final wage payment. Lebe Decl., ¶ 51; Dkt. No. 37-1, at ¶ 26.

With respect to Plaintiffs' PAGA claim, Defendant contends that the PAGA claim fails because the underlying claims fail. Lebe Decl., ¶ 50; Dkt. No. 37-1, at ¶ 27; *see Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Defendant also argues that the PAGA claim would not be manageable, since individual inquiries would be needed to determine whether employees actually received and/or waived their meal or rest period(s) on any given shift, and whether each employee was reimbursed for all necessary business expenses. Lebe Decl., ¶ 52; Dkt. No. 37-1, at ¶ 27; *see Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App. 5th 746 (2021) (affirming trial court's striking of PAGA claim, based on unmanageability of PAGA trial due to individualized questions among individual aggrieved employees); *Brown v. Am. Airlines, Inc.*, 2015 WL 6735217, at *4 (C.D. Cal. Oct. 5, 2015) (finding too many individualized assessments to determine PAGA violations); *Amiri v. Cox Commc'ns California*, LLC, 272 F. Supp. 3d 1187, 1194 (C.D. Cal. 2017) (violations relying on individual experiences rather than policies or practices common to aggrieved employees "in combination with the fact that liability determinations will require individualized inquiries to prove Plaintiff's PAGA representative claims," make it "appropriate to strike Plaintiff's PAGA representative claims as unmanageable"). Although the California Supreme

Court's recent decision in *Estrada v. Royalty Carpet Mills, Inc.* prevents the Court from striking a PAGA claim based on manageability concerns, Defendant also asserts that, given its good-faith defenses, this Court would utilize its discretion under Labor Code section 2699(e)(2) to significantly reduce any PAGA civil penalties. 15 Cal. 5th 582 (2024); Lebe Decl., ¶ 53; Dkt. No. 37-1, at ¶ 27; *see* Labor Code § 2699(e)(2) (authorizing reduction in PAGA penalties in trial court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); *Fleming v. Covidien, Inc.*, No. ED-CV-10-1487 RGK (OPx), 2011 U.S. Dist. LEXIS 154590, at *8-9 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000); *Carrington v. Starbucks Corp.,* 30 Cal. App. 5th 504, 529 (2018) (affirming PAGA penalty of just $5 per pay period where employer made "good faith attempts" to comply with the law). Moreover, the PAGA claim presents the biggest risk as the Court could have significantly reduced an award under the PAGA to almost nothing. Lebe Decl., ¶ 54; Dkt. No. 37-1, at ¶ 27. Thus, the valuation of these claims was tempered by the strengths and defenses related to the underlying claims. *Id.*

These considerations not only bore heavily on the Parties' negotiations, but also confirm that the Settlement is a fair and reasonable compromise in view of the risk of further litigation. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotations omitted). Thus, this factor supports final approval.

## 2. Risk, Expense, Complexity, and Duration of Further Litigation

Although the Parties engaged in significant informal and formal discovery, investigation, and classwide data analysis, they had not completed formal

discovery.  Lebe Decl., ¶ 29; Dkt. No. 37-1, at ¶¶ 18-20.  Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals.  *Id.*  Thus, the parties would incur considerably more attorneys' fees and costs through trial.  This settlement avoids those risks and accompanying expense.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LXIS 88886, at *8 (N.D. Cal. Nov. 26, 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Thus, this factor favors of final approval.

### 3.  <u>Risk of Maintaining Class Action Status</u>

Plaintiffs had not yet moved for class certification.  Lebe Decl., ¶ 29; Dkt. No. 37-1, at ¶ 19.  Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything.  *Id.*  As discussed *infra*, Defendant asserted several defenses to class certification which raised substantial risks associated with certifying the class.  Thus, this factor also supports final approval.

### 4.  <u>Amount Offered in Settlement Is Reasonable Given the Realistic Value of Plaintiff's Claims in Light of the Significant Litigation Risks</u>

As discussed in detail in Plaintiffs' Motion for Preliminary Approval, and further addressed above, the non-reversionary $1,320,000.00 Gross Settlement Amount is reasonable given the realistic value of Plaintiffs' claims and the risks inherent in pushing those claims forward.  *See* Dkt. No. 37.  Moreover, as discussed above, the risks that attended to Plaintiffs' claims further demonstrate the reasonableness of the Settlement.  As this Court found in its Preliminary Approval Order, "the settlement is fair, reasonable, and adequate, [] the class could be certified for purposes of settlement," and the requirements of Rules 23(a) and 23(b)(3) are met.  Dkt. No. 53, at pp. 1, 10-12.  Nothing has changed since that time to call the Court's determination into question.  Moreover, given the amount

recovered in this action, with Settlement Class members on average receiving $280.87 each, the amount recovered in this Settlement favors final approval.

### 5.    Discovery Completed and the Stage of the Proceedings

The parties engaged in significant investigation, formal classwide discovery, informal classwide discovery, and analysis prior to reaching the proposed settlement. Lebe Decl., ¶ 29; Dkt. No. 37-1, ¶¶ 11-13. As noted above, the Parties engaged in extensive discovery, and Defendant provided detailed data regarding Settlement Class Members' timekeeping and payroll data, its relevant wage and hour policies, and Plaintiffs extensively analyzed the data to come up with various exposure models. Lebe Decl., ¶ 30; Dkt. No. 37-1, ¶¶ 11-13. It was only after this exchange of comprehensive data and information that the parties participated in a full-day mediation with an experienced wage and hour mediator, engaged in post-mediation negotiations, and ultimately reached the settlement by way of a mediator's proposal. *Id.* This factor supports final approval.

### 6.    The Experience and Views of Counsel

The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g., In re Omnivision Techs., Inc*., 559 F.Supp. 2d 1036, 1043 (N.D. Cal. 2008). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiffs are represented by experienced wage and hour class action counsel who have significant wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in federal and state courts of California. *See* Lebe Decl., ¶¶ 3-19; Dkt. No. 37-1, at ¶¶ 3-11. This factor strongly supports final approval. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, at *24 (N.D. Cal. Aug. 2, 2011) ("When experienced counsel conclude that

a proposed settlement agreement is fair, such a conclusion is entitled to great weight.") (quotation omitted).

### 7. The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal 2004).

Here, the class member response to the Settlement has been overwhelmingly positive. Only six (6) Class Member have objected to the Settlement and only eleven (11) elected to opt-out of the Settlement, resulting in a **99.6%** participation rate. *See* Lebe Decl., ¶ 38; Mills Decl., ¶¶ 12, 13, 16. The overwhelmingly positive reaction of the Settlement Class Members to the Settlement supports final approval.

## V. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED

In its December 5, 2023, order granting preliminary approval, this Court certified the Settlement Class for settlement purposes. *See* Dkt. No. 53. Because circumstances have not changed, and for the reasons set forth in their Motion for Preliminary Approval (Dkt. No. 37), Plaintiffs request that the Court finally certify the Class for settlement purposes. *See Schiller v. David's Bridal, Inc.,* No. 1:10-cv-616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776, at *22 (E.D. Cal. June 11, 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

///

///

SMRH:4893-5986-7316.3

## VI.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this Motion in its entirety and enter the order granting final approval of the settlement filed concurrently herewith.

Respectfully submitted,

Dated: April 10, 2024                    **LEBE LAW, APLC**

By:    <u>/s/ Jonathan M. Lebe</u>
Jonathan M. Lebe
Brielle D. Edborg
Attorneys for Plaintiffs Raul Martinez and Philippe Vieux, Individually and on behalf of all others similarly situated

-15-