UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL MARTINEZ and PHILIPPE VIEUX, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC., Which Will Do Business In California As Arizona Knight Transportation, Inc.,<br><br>Defendant. | Case No.: 5:21-cv-00572-MEMF-SP<br><br>**ORDER DENYING MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE SETTLEMENT AND DENYING AS MOOT MOTION FOR ATTORNEYS' FEES [ECF NOS. 62, 63]** |

Before the Court are a Motion for Final Approval of Class Settlement filed by Plaintiffs Raul Martinez and Philippe Vieux (ECF No. 62), an objection thereto filed by non-party Kristopher Kaczanowski (ECF No. 61), and a Motion for Attorneys' Fees filed by Plaintiffs Raul Martinez and Philippe Vieux (ECF No. 63). For the reasons stated herein, the Court DENIES the Motion for Final Approval of Class Settlement and DENIES AS MOOT the Motion for Attorneys' Fees.

/ / /

/ / /

I. **Background**

    A. **Factual Background**[1]

Defendant Knight Transportation, Inc. ("Knight"), is a trucking company. FAC ¶ 2. Plaintiffs Raul Martinez ("Martinez") and Philippe Vieux ("Vieux," or collectively with Martinez, "Plaintiffs") were drivers for Knight. *Id.* ¶ 1.

Plaintiffs allege that Knight engaged in a systemic pattern of wage and hour violations in violation of California law. *See id.* ¶ 3. These violations included: paying solely by mileage and not for pre- and post-trip work, failing to pay for rest breaks, failing to pay overtime, failing to provide meal and rest breaks, failing to reimburse for business expenses, and failing to pay final wages. *See id.* ¶ 4.

    B. **Procedural History**

        i. This Action

Martinez and Vieux filed this class action in San Bernardino County Superior Court on July 7, 2020. ECF No. 1-1. Knight filed an Answer on December 18, 2020. ECF No. 1-7. Martinez and Vieux filed a First Amended Complaint ("FAC") on January 29, 2021. *See* FAC. Knight filed an Answer to the FAC on February 26, 2021. ECF No. 1-12. Knight removed the action to this Court on April 1, 2021. ECF No. 1.

The FAC asserts eleven causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Timely Pay All Earned Wages; (4) Unlawful Deduction of Wages; (5) Failure to Provide Meal Periods; (6) Failure to Permit Rest Breaks; (7) Failure to Provide Accurate Itemized Wage Statements; (8) Failure to Reimburse Necessary Business Expenses; (9) Failure to Pay All Wages Due Upon Separation of Employment; (10) Violation of California Business and Professions Code section 17200, *et seq.* (the "Unfair Competition Law" or "UCL"); and (11) Civil Penalties under the California Private Attorneys General Act ("PAGA"). *See* FAC.

---

[1] The following factual background is derived from Plaintiffs Raul Martinez and Philippe Vieux's First Amended Complaint. ECF No. 1-10 ("FAC"). The Court makes no finding on the truth of these allegations and includes them only as background.

2

1   On December 13, 2023, the parties participated in a mediation with an experienced wage and
2   hour class action mediator. *See* ECF No. 37-2 ("Lebe Declaration" or "Lebe Decl.") ¶ 20. When the
3   mediator later issued a proposal for a settlement, the parties accepted his proposal. *See id.*

4   Plaintiffs filed their Motion for Preliminary Approval of Class and Representative Action
5   Settlement, along with several supporting declarations and exhibits, on July 20, 2023. ECF No. 37
6   ("Motion" or "Mot."); ECF Nos. 37-1–37-5. The Court held a hearing on the Motion on November
7   16, 2023. At the hearing, the Court identified for the parties its concerns with the proposed plan for
8   notice to class members. After the hearing, the Court issued an Order requiring the parties to file a
9   joint status report answering certain questions and revising the proposed class notice. *See* ECF No.
10  49. On November 30, 2023, the parties filed a Joint Statement in response to the Court's Order. *See*
11  ECF No. 51. The Joint Statement included an amended proposed class notice. *See id.*

12  On December 5, 2023, the Court issued an Order granting preliminary approval of the
13  proposed settlement.[2] *See* ECF No. 53 ("Preliminary Approval Order"). In its Order, the Court found
14  that the settlement was "fair, reasonable, and adequate." *See id.*

15      ii.   The *Hamilton* Action

16  In a distinct action, Plaintiff Bennie Hamilton ("Hamilton") filed a class action complaint in
17  this Court on November 2, 2021, as Case No. 5:21-cv-01859-MEMF-SP. *See Bennie Hamilton v.*
18  *Kold Trans, LLC et al*, Case No. 5:21-cv-01859-MEMF-SP, ECF No. 1 (C.D. Cal. Nov. 2, 2021). In
19  his initial complaint, Hamilton brought suit against Defendants Kold Trans, LLC ("Kold Trans");
20  Knight; Knight Refrigerated, LLC ("Knight Refrigerated"); and Knight-Swift Transportation
21  Holdings, Inc. ("Knight-Swift"). *See id.* Hamilton alleged various wage and hour violations on
22  behalf of himself and a class of all similarly situated persons. *See id.* Hamilton amended his
23  complaint several times, ultimately arriving at a Fourth Amended Complaint which brought claims
24  against Knight and Defendant Knight Port Services, LLC ("Knight Port"), with four named

---

[2] The Court's Preliminary Approval Order was erroneously captioned "ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT." *See* Preliminary Approval Order. The Court later corrected this error in the caption via a Minute Order. *See* ECF No. 54.

plaintiffs: Hamilton, Kristopher Kaczanowski ("Kaczanowski"), Leroy Coker ("Coker"), and Darrell Brown ("Brown"). *See Bennie Hamilton v. Kold Trans, LLC et al*, Case No. 5:21-cv-01859-MEMF-SP, ECF No. 74 (C.D. Cal. May 25, 2023).

Hamilton purportedly became aware of the settlement of this action (the *Martinez* Action) on March 5, 2024, when one of the *Hamilton* plaintiffs received a class notice regarding the settlement. See ECF No. 87 at 6. Hamilton then filed an Ex Parte Application to Stay the *Hamilton* Action Pending Final Approval of Class Action Settlement in the *Martinez* Action. *See Bennie Hamilton v. Kold Trans, LLC et al*, Case No. 5:21-cv-01859-MEMF-SP, ECF No. 87 (C.D. Cal. Mar. 12, 2024). The Court granted the application and stayed the *Hamilton* Action on March 27, 2024. *See Bennie Hamilton v. Kold Trans, LLC et al*, Case No. 5:21-cv-01859-MEMF-SP, ECF No. 91 (C.D. Cal. Mar. 27, 2024).

### iii.  The Instant Motion

Kaczanowski filed an Objection to the settlement of this action, along with various supporting documents, on April 8, 2024. ECF No. 61 ("Kaczanowski Objection"). Plaintiffs filed the instant Motion for Approval of Class and Representative Action Settlement on April 10, 2024, along with various supporting documents. ECF No. 62 ("Settlement Approval Motion" or "SA Mot."). Plaintiffs also filed a Motion for Attorneys' Fees on April 10, 2024. ECF No. 63 ("Fee Motion" or "Fees Mot."). Plaintiffs filed a Response to the Kaczanowski Objection on April 23, 2024, along with an attorney declaration and supporting documents. ECF No. 65 ("Plaintiffs' Response"); ECF No. 69 ("Ellis Declaration" or "Ellis Decl."). Knight also filed its own Response to the Kaczanowski Objection on April 23, 2024. ECF No. 68 ("Knight's Response"). Additionally, Knight filed Evidentiary Objections to some evidence discussed in the Kaczanowski Objection. ECF No. 70.

The Court held a hearing on the Settlement Approval Motion and the Kaczanowski Objection on May 7, 2024.

## II.   Applicable Law

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement where either the class has been certified or the class will be certified for purpose of settlement. *See* Fed. R. Civ. P. 23(e).

The role of a court considering a class settlement is a limited one, and the court should only intrude on "what is otherwise a private consensual agreement" "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### III.  Discussion

The Court finds that the parties to this action have not shown that the proposed settlement is fair, reasonable, and adequate. Accordingly, the Court DENIES the Settlement Approval Motion. In light of this denial, the Court DENIES AS MOOT the Fee Motion.

On its first review of the proposed settlement in this action, the Court largely accepted as true Plaintiffs' and Knight's contentions as to fairness of the settlement, including the analysis of the risks of litigation and resulting discounting of the settlement from the possible maximum recovery. The Court has now had an opportunity to hear from objectors, and, as is the purpose of this two-step process, now views the proposed settlement differently in light of those objections. Plaintiffs' argument that the Court should defer to Plaintiffs and Knight, and avoid "intrusion" upon a private settlement agreement (*see* Plaintiffs' Response at 5) is largely inapplicable here—the proposed settlement in this class action will impact many parties who did not take part in the settlement discussions, and so the Court has an obligation to make sure that the settlement is fair to parties that were not represented in its negotiation. While the Court should not simply substitute its judgment for that of the parties, the Court has an obligation to ensure the settlement is "fair, reasonable, and adequate." *See Hanlon*, 150 F.3d at 1027. Here, the Court finds that Plaintiffs and Knight have not shown that this is the case.

Of particular concern to the Court is the method through which Plaintiffs and Knight calculated the settlement amount through a series of discounts. The series of discounts have not been fully justified and do not appear to reflect a fair, reasonable, and adequate settlement of the claims.

Plaintiffs and Knight calculated the settlement by estimating exposure and applying a series of discounts for risks. *See* ECF No. 37-2 ¶¶ 23–28 (explaining calculation of settlement). This

method, in the abstract, appears theoretically appropriate, but the specifics at issue here are not fully explained and do not appear to reflect a fair, reasonable, or adequate settlement.

The calculation was done as follows. Plaintiffs and Knight first calculated a total possible exposure for each claim that appeared potentially meritorious.[3] This total possible exposure number was not provided to the Court, but it can be reverse engineered based on the other numbers provided. Plaintiffs and Knight next discounted this total possible exposure by some percentage, varying by claim, to account for the risk that a given claim would not be certified. *See, e.g.*, ECF No. 37-2 ¶ 24 (claim for inaccurate wage statements was discounted by 65% for the risk that the claim would not be certified). The total possible exposure was then further discounted by some percentage, again varying by claim, to account for the risk that a given claim would lose on the merits. *See, e.g.*, ECF No. 37-2 ¶ 24 (claim for inaccurate wage statements was discounted by 70% for the risk that the claim would fail on its merits). The result of these two steps was described by Plaintiffs and Knight as the "projected exposure," "estimated exposure," or "total realistic recovery." *See, e.g.*, ECF No. 37 at 14; ECF No. 37-2 ¶ 28; ECF No. 37-2 ¶ 24 ("projected exposure" for claim for inaccurate wage statements, after applying discounts, was $331,222). To reiterate—this so-called "projected exposure" was not the total amount that Plaintiffs and Knight estimated would be won if Plaintiffs succeeded at certification and succeeded on the merits, rather, the "projected exposure" is a discounted amount that significantly reduced each claim to account for the risks that the claim would fail at certification or fail on its merits. *See, e.g.*, ECF No. 37-2 ¶ 24. Plaintiffs and Knight estimated that the "projected exposure" or "total realistic recovery" for all claims that appeared meritorious was $8,467,333, after accounting for the risks described above. *See* ECF No. 37-2 ¶ 28. Plaintiffs and Knight then applied a further 87% discount to this already-discounted total, arriving at a total

---

[3] Plaintiffs and Knight did not do any calculations for certain of the claims, which the Court understands to be based on an agreement that those claims had zero value. See ECF No. 37-2 ¶¶ 23–28 (only addressing some of the eleven claims at issue in calculating the settlement). Kaczanowski objects to the exclusion of certain claims, arguing that those claims are not valueless. The Court need not reach that issue—even limiting the analysis to the claims that Plaintiffs and Knight addressed, the Court has sufficient concerns to deny the Settlement Approval Motion, and so need not consider whether the other unaddressed claims provide additional reasons to deny it.

settlement amount of $1,100,000. *See id.* Plaintiffs and Knight now seek approval of an all-inclusive settlement totaling $1,100,000.[4] *See id.* The table below shows the calculations for each claim:

| Claim No. (per FAC) | Claim | Implied Total Possible Exposure[5] | Certification Risk Discount | Merits Risk Discount | "Projected Exposure" | Settlement Amount[6] |
|---|---|---|---|---|---|---|
| 1 | Failure to Pay Minimum Wages | $22,083,384[7] | 50% | 50% | $5,520,846 | * |
| 2 | Failure to Pay Overtime Wages | | | | | |
| 3 | Failure to Timely Pay All Earned Wages | No Value | N/A | N/A | N/A | * |
| 4 | Unlawful Deduction of Wages | No Value | N/A | N/A | N/A | * |
| 5 | Failure to Provide Meal Periods | No Value | N/A | N/A | N/A | * |
| 6 | Failure to Permit Rest Breaks | No Value | N/A | N/A | N/A | * |
| 7 | Failure to Provide Accurate Itemized Wage Statements | $3,154,495.24 | 65% | 70% | $331,222 | * |
| 8 | Failure to Reimburse Business Expenses | $315,000.00 | 50% | 25% | $118,125 | * |
| 9 | Failure to Pay All Wages Due Upon Separation of Employment and Within the Required Time | $6,045,092.00 | 50% | 50% | $1,511,273 | * |
| 10 | Violation of California UCL | No Value | N/A | N/A | N/A | * |
| 11 | PAGA Penalties | $13,144,893.33 | 75% | 70% | $985,867.00 | * |
| | Total | $44,742,865 | | | $8,467,333 | $1,100,000 |

*See* ECF No. 37-2 ¶¶ 23–28.

---

[4] At the hearing, Plaintiffs and Knight clarified that due to various escalation clauses, the final settlement will be approximately $1.3 million rather than $1.1 million. This fact was mentioned in the briefing but not explicitly made clear. *See* SA Mot. at 8 (discussing "the non-reversionary $1,320,000.00 Gross Settlement Amount"), 11 (Under header "Monetary Terms, Plaintiffs state that "The Settlement provides for Defendant to pay a non-reversionary Maximum Gross Settlement Amount of $1,100,000.00."). This distinction does not materially change the Court's analysis.

[5] The "Implied Total Possible Exposure" was not provided by Plaintiffs, and was calculated by finding a number which, when discounted by the amounts stated by Plaintiffs, led to the "projected exposure" Plaintiffs provided.

[6] The settlement amount is not broken up by claim in Plaintiffs' description of it, and so this table reflects only the total settlement amount.

[7] Although this is not made explicit, the Court reads the calculations described in paragraph 23 of ECF No. 37-2—a claim that "that Defendant's timekeeping policies and practices resulted in an underpayment of wages"—as applying to both the first and second causes of action, and so has merged these two lines in the table. *See* ECF No. 37-2 ¶ 23. This is ultimately of no moment; even if this calculation is intended to apply only to the first cause of action (or if it is intended to encompass other claims in addition to the first and second), it would not change the Court's analysis.

Plaintiffs and Knight have totally failed to justify, or even explain, the final step in this calculation—the 87% discount applied to an estimate that had already been discounted to account for the risks that a claim would not be certified or would fail on its merits. Kaczanowski pointed this discount out and stressed it in his objection, and neither Plaintiffs nor Knight made any attempt to explain this reduction or defend it in their respective responses. While it might be appropriate to apply a further discount (on top of those applied for certification risk and merits risk) to account for the costs of litigation, the benefits to Plaintiffs of speedy recovery, other risks, or other factors, Plaintiffs and Knight have not explained why the 87% reduction at this final step is appropriate here.

At the hearing, Plaintiffs and Knight were again unable to justify the 87% reduction. Plaintiffs first argued that the 87% reduction was a necessary compromise. Although some compromising is of course necessary to reach a settlement, Plaintiffs and Knight have failed to show that an 87% reduction (after the other discounts) is a fair and adequate compromise. Plaintiffs further argued that some of the claims would fail as a matter of law, but to the extent that this is true, it appears to the Court that it was already accounted for by not assigning any value to certain claims (*see* supra n. 3), and so this cannot explain the reduction. Plaintiffs also argued that the claims had risks associated with them, including that there were questions as to whether California law applied. Knight also stressed the weakness of the claims and of the case as a whole. But the substantive weakness of the claims was also separately accounted for, as Plaintiffs and Knight reduced the claim values by 25–75% to account for merits risk, and so this risk cannot also explain the later 87% discount. The 87% discount, applied after other significant discounts for certification risk and merits risk, is both unexplained and quite high. In sum, the Court sees no basis to find this reduction fair, reasonable, or adequate. It appears that Plaintiffs and Knight agreed upon a number which was significantly lower than their own estimates of claim value and are unable to explain the discrepancy.

As Knight notes in its response, the Ninth Circuit has held that the Court is not "required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (emphasis added). However, the Court should nevertheless "assess the

1  plaintiffs' claims in determining the strength of their case relative to the risks of continued
2  litigation." *Id.* While the Court is not *required* to compare the possible recovery amount for each
3  claim to the proposed settlement amount, no case law prohibits the Court from making such a
4  comparison. The Court is relying on estimates provided by Plaintiffs and Knight, and the Court finds
5  that those estimates simply do not support the proffered settlement.

6  Kaczanowski also raised other arguments as to the fairness of the settlement. Kaczanowski
7  argues that the *Hamilton* Plaintiffs have taken significant discovery, that the Plaintiffs here have not,
8  and that the discovery taken shows violation rates higher than those that the proposed settlement
9  suggests, particularly as to the claim for failure to furnish accurate wage statements. *See*
10 Kaczanowski Objection at 2. Kaczanowski asserts that Plaintiffs failed to take discovery on this
11 issue and "appear[] to have neither requested nor reviewed the wage statements." *See id.* Knight's
12 response took issue with some Kaczanowski's analysis of the wage statements from the *Hamilton*
13 litigation (*see* Knight Response at 13–16), but did not contradict the assertion that Plaintiffs here
14 failed to take discovery on this issue or review relevant documents before negotiating the settlement.
15 And Plaintiffs did not address this at all. *See* Plaintiff's Response. On a broader level, Kaczanowski
16 asserts that the evidence suggests that Plaintiffs here did not conduct "any meaningful pre-settlement
17 discovery." *See* Kaczanowski Objection at 2. Plaintiffs assert that the settlement was reached after
18 "after months of analysis and discovery," but provide absolutely no detail on what discovery was
19 conducted, essentially conceding the point. *See* Plaintiffs' Response at 11. The declaration Plaintiffs
20 cite to in support of this point similarly contains absolutely no detail on what discovery, if any, was
21 conduct, simply asserting that the settlement was negotiated "after months of engaging in robust
22 legal research and analysis, extensive investigation by the parties and by Class Counsel, the
23 exchange of extensive class-wide data and analysis of that data, motion practice, and extensive
24 litigation." *See* ECF No. 62-1, ¶¶ 30-32. Knight also asserts that "the extent of discovery completed"
25 supports approval of the settlement, but provides no detail on what discovery, if any, was conducted.
26 *See* Knight Response at 1. At the hearing, Plaintiffs explained that they actually have taken
27 significant discovery, and that their Motion did not explain this in detail because Plaintiffs believed
28 their efforts at discovery were self-evident because they filed and prevailed on a Motion to Compel.

*See* ECF No. 12. The Court ultimately need not reach the question of how much discovery the respective parties have taken, as the Court's analysis of the settlement is sufficient to deny this Motion. The Court need not reach other arguments, including Kaczanowski's argument that the that the claims Plaintiffs and Knight agreed have no value are actually quite valuable (which Knight responds to by arguing some claims are preempted), or the various arguments regarding the number of workweeks relied upon by the Mediator in crafting the agreement (where both Kaczanowski and Knight make arguments based on statements that the Mediator purportedly made out of court to the respective parties' counsels). Nor need the Court reach Kaczanowski's Request for Judicial Notice. *See* ECF No. 61-3. Plaintiffs and Knight have failed to show that the settlement is fair, reasonable, and adequate.

Finally, the Court finds that in light of the denial of the Settlement Approval Motion, the Fee Motion is Moot. The Fee Motion is premised on the notion that the settlement agreement should lead to an award of attorneys' fees. *See* Fee Mot. Given that the Court will not approve the settlement, the Fee Motion has no basis.

At the hearing, Plaintiffs and Knight argued that if the Motion is denied, the Court should allow Plaintiffs and Knight to file a new motion with more detail as to why the same settlement should be approved. The Court finds that this would not be an efficient use of judicial time and resources, and would also not be fair to the *Hamilton* parties. The *Hamilton* action has been stayed since March 27, 2024, pending resolution of this Motion. *See Bennie Hamilton v. Kold Trans, LLC et al*, Case No. 5:21-cv-01859-MEMF-SP, ECF No. 91 (C.D. Cal. Mar. 27, 2024). The Court does not find it appropriate to continue with that stay, effectively prohibiting the *Hamilton* Plaintiffs from pursuing their claims, in order to give Plaintiffs and Knight a second bite at the apple. Instead, the Court's view is that this action should be stayed pending resolution of the class certification motion in the *Hamilton* action.[8]

---

[8] The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent

Accordingly, this action shall be stayed pending resolution of the class certification motion in *Hamilton*. Plaintiffs may file a renewed motion for approval of this settlement after that motion is decided if they so desire. This stay is without prejudice as to any party's right to file a motion or stipulation to consolidate the two actions, or as to Plaintiffs' right to coordinate with or work together with the *Hamilton* Plaintiffs to settle both actions in a way that is satisfactory to all parties.

### IV. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. The Motion for Final Approval of Class Settlement (ECF No. 62) is DENIED.
2. The Motion for Attorneys' Fees (ECF No. 63) is DENIED AS MOOT.
3. This action shall be STAYED pending resolution of the motion for class certification in the *Hamilton* action.

IT IS SO ORDERED.

Dated: June 11, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979). Whether to stay a case is left to the "sound discretion" of a trial court. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In exercising this discretion, courts should consider "the competing interests which will be affected by the granting or refusal to grant a stay," including "the possible damage which may result from the granting of a stay," "the hardship or inequity which a party may suffer in being required to go forward," and "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*; *see also Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (similar).

Applying these factors, the Court finds a stay of this action appropriate to allow resolution of the class certification motion in the *Hamilton* action.